v. John Hancock Life Insurance Company, USA, Appellant 1-22-12366, Appellant 1-22-12366,  businessman. Good morning, Your Honors. May it please the Court, I'm Mat Weinshall Podhirst-Dorsek on behalf of the Plaintiffs, Eric and Todd Romano as trustees of the Romano law 401c Plan and the certified class of similarly situated retirement plans. This case concerns more than $100 million in foreign taxes deducted from the investments of the certified class, some 60,000 retirement plans nationwide. Foreign tax credits from these class paid taxes flowed to John Hancock, which owned the investments for the benefit of the class under group annuity contracts and record keeping agreements with the plans. However, Hancock declined to pass through the value of these credits to the plans. Although Hancock's initial receipt of the foreign tax credits complied with the tax code and thus were not challenging anything about Hancock's claiming of the tax credits, its refusal to pass through the value of the credits to the plans violated the strict fiduciary duty provisions of ERISA. The district court concluded that Hancock was not a fiduciary as a matter of law, reasoning that the foreign tax credits are not plan assets and that Hancock does not qualify as a functional fiduciary and thus dismissed plaintiff's claims for lack of standing, holding that there were no fiduciaries, that there was no breach of fiduciary duty and no loss causation. It seems like it seems like the main point against you, which is why I'm interrupting you so you can address this, is that the fund would not get the tax credits but for Hancock's holding of the assets and that because the fund doesn't pay taxes, it's not going to get these tax credits. So what do you say about that as a way to say this is not the fund's property? Well, that applies perhaps under the plan asset prong. I think there's two prongs to fiduciary duty status. One is control and management of the plan. The other one is plan assets. And so, you know, I see that argument as one going to whether these are plan assets, not necessarily whether it's, you know, control and management or administration of the plan. You know, just as a check that would be given to John Hancock is not something that could actually be used by the plan until John Hancock cashes it. The foreign tax credits are just like that. They can't. It has no value to the plan until John Hancock claims it on its tax forms. But once it does that, it's money and it's valuable just like anything else to the plans. Yeah. But I mean, my understanding is that if there were a different structure, right, and the fund just owned the assets itself, these tax credits wouldn't be used at all. That's true. That's true. So given that, aren't they, I mean, isn't John Hancock, isn't it its money? I mean, why is it the funds? Why should John Hancock have to give the value of those tax credits to the fund given that the only way they exist is because John Hancock is there? Well, the other side of that coin is it doesn't just exist because John Hancock is there. It exists because those retirement plans are making those investments. And that's the investments that are those taxes are actually deducted from the investments made by the retirement plan. So John Hancock is claiming these credits. It's true. It's a joint relationship. One cannot exist without the other. But the point is, when you put the two together, it produces this benefit. And the question is, who gets that benefit? And under ERISA, we think if John Hancock wanted to claim that benefit, it needed to actually negotiate that in the contract. And that's, I think, what, yes, Your Honor? No, no, no. Go ahead. I was going to let you finish. I think what this case sort of comes down to is when the contract is silent and it doesn't say who gets a benefit that flows from the plan asset, who wins, the plan or the service provider? And I think under any sort of ordinary idea of fiduciary duties, I think that the plan should be construed against the service provider and the benefit should be given to the plan. The question I'm going to ask you is not a question that needs to be answered for purposes of this appeal. But I'm going to ask because I'm trying to wrap my head around one of your breach of fiduciary duty theories. Let's assume that you get past this stage. Is the contention that John Hancock had to give back dollar for dollar every tax credit it got or had to give back the net profit that or the net benefit it gained from assessing the tax credit? So, for example, in a given year, John Hancock gets $10 million of tax credits. But given the way that its tax liability worked out that year, those $10 million in tax credits give it a net of $8 million of benefit. Was it required to give you the 10 or the 8? Our our claim in this case, and it was backed up by Mr. Mccall, who was our expert, and I think his report was at. 26623 was that it was the net. So if if John Hancock pays and a simple example, I think we had in our papers below was if there's like a, let's say, a $10 dividend that goes to the investments for the plan and there's $2, this is a foreign dividend, $2 get taxed by the foreign authority. Um, that $2, um, comes into John Hancock, and they reported as as income, right? And they can either take a deduction, which means the income goes away. There's no cost or no benefit to John Hancock. If they claim it as a tax credit, then they basically pay us tax on it, which would be 30%, let's say, and so that would be 60 cents, but they get the $2 benefits. So the net of that is 140 to minus 60 cents. And so our claim is that 140 should be going to the plan, or if John Hancock wants to keep it, it needs to disclose it because that's compensation that it receives. And the only John, if John Hancock disclosed it, but didn't give it, would there be a breach? I think if John, not just disclose it, but actually in the contract said, this is what we're going to take as our compensation, then it would not be a breach. Because I think that the case law is pretty clear. The used in case, the Dupree case that your honor wrote, if you negotiate in advance with a service provider and say, this is what we're going to be paid for our services. And the producer on the other side, the plan fiduciary has a chance to dispute it and say, no, that's too much or we want that once there's an agreement, the service provider and the owner of the annuity contract is then able to comply with those policies. And that's what we think distinguishes a lot of the cases that the district court relied upon. I mean, the granular details of these cases are pretty important, but I think the district court painted with a broad brush and said, well, we're really challenging is John Hancock's treatment of its taxes. And that's not it at all. We're not. Let me just ask you to address that in this in this respect. I mean, isn't the necessary implication of your argument is that John Hancock would violate its fiduciary duty if it didn't take the tax credit? No, I don't think so. So it could just say, even though this is if this is the funds money, we're not going to take the tax credit. We're going to do something else. No, I think I think it can do whatever it wants on its tax forms, just like if you're given a check, you can rip up the check or you could deposit it. But once it takes that credit and almost the evidence is it almost always takes the credit because a credit when it comes in, it can be rolled forward by 10. But it always takes a credit because it gets it gets something from the credit. But once once we say it doesn't get any benefit from the credit, it's going to say, OK, well, why are we going to do that? We're going to just take deductions or we're going to do something else with our income. The next case is going to be you're violating your fiduciary duty to the fund by not taking this credit in the same way you would be violating your fiduciary duty to the fund if you sent back the dividends that the stock was sending you. Right. I don't think so, Your Honor. OK, why not? Well, I think a corporation's own treatment of its taxes in terms of what deductions it takes. And I think the Amakai were right about this, that if if we're only challenging its decisions on its tax forms, that would be problematic. And I think land for case versus Home Depot that this court has decided in that case, it was about SEC disclosures. And then they got passed on to the plan and the court held those SEC disclosures. That's just part of what the corporation's duties are by itself. So I think, you know, John Hancock, when he gets money in, it can or it gets these credits in. They can decide, you know, do they actually want to turn them into money or do they want to just deduct them? Those are the only two choices. And if it turns it into money, then that's that's that's a benefit that should be shared with the plan. Which means that's when the fiduciary duty is triggered. Well, I think the fiduciary duty is triggered by this ongoing relationship. Right. They administer the plans. They they hold these assets for the benefit of the plans. And so when I mean, there's money coming in and out of these plans all the time, whether participants are coming in and investments are returning, dividends are coming in. And so the question is, you know, when benefits are coming in and they're not assigned to anybody in particular who gets those. And if John Hancock wants to keep the benefit of them, it has to negotiate that contract with the plans. And it didn't go the other way, too. In what way? That if the Romanos treating them collectively want to get the tax credits back, they need to negotiate for it, too. Well, I think I think that is probably the argument of John Hancock. This is this is not this is not a relationship of Goliath and giant in the normal sense. I know John Hancock is bigger than the Romanos 401k plan, but. These are people going to John Hancock as one of various options for investment purposes, and it's not a make it or take, you know, take it or leave it thing. And people are able to talk about different things they want, things that they don't want, what John Hancock can and can and will and will not offer what the client would prefer. And so it doesn't that obligation go both ways in the negotiation? I think it probably does go both ways in terms of what you negotiate. But when it's not negotiated and when it's silent, the question is, what is the fiduciary who's who's holding on to these assets? And there's no dispute that when John Hancock is holding these assets, because in the midst of this much in the record keeping agreement at one ten one, that it is a fiduciary. And so when a benefit comes in, that's not assigned to anybody. And it's definitely paid for by the by the plan. It's not assigned to anybody. I mean, it's on their tax return, though, right? I mean, doesn't this credit in I mean, the credit only exists because they have income that then the credit can go against. Right. That that is how they monetize it. Yes. Yeah. So I mean, so the federal government is saying this is your credit in the sense that you did owe ten million dollars and now you only owe five million dollars to the federal government. That's right. But just like why isn't it assigned to them if it's assigned by anybody? Well, because just like the investments themselves are in John Hancock's name. So you would say those investments are theirs, but but but they're for the benefit of the plans. And so that's why. And that's but I guess that's the it seems like you're assuming the answer instead of arguing for the answer. I mean, isn't the question. Whether John Hancock is taking this tax credit for the benefit of the fund in a fiduciary response, fiduciary relationship with the fund or whether it's just taking it because it's it has to file taxes like any corporation has to file taxes. I think the reason it's taking it is is not important. And I think the question is, who does that benefit? Who should that benefit belong to once it's taken that credit? And our point is that it should belong to the plans because the plans pay for it. And there was some guidance that we cited that's in insurance context and insurance policies when there's retrospective rate credits, even though the insurance company is the title holder. Just like here, John Hancock is the title holder of those tax credits. It should be given to the plan because the plans directly paid for it. The example that the I see my time is up, so I can. Well, I just wanted to finish that. And then Jibudu has a question. OK, yes, your honor. One of the examples that the Amakai raise sort of in a parade of horribles of what could happen if we recognize that these are plan assets was, you know, any benefit, any indirect benefit that an insurer gets from performing its duties could somehow be called a plan asset. And that's not our argument at all. The argument is that when the plan directly pays for a tax credit that belong, it should belong to the plan under, especially when you don't mean, you know, you don't mean pay for the tax credit. Literally, you mean earn, earn revenue or income from which taxes are paid, which then leads to a tax credit. Because the funds don't pay a tax. Correct, correct. Yes, government can give you a tax credit. Well, what I mean is that that that two dollars that gets paid, in my example, from the from that ten dollar dividend. Right. That's the investments that would belong to the plan that they're losing that two dollars. I know I understand that. Yeah, Jibudu has a question. Yeah, I think it's related to Judge Brasher's question, which I'm trying to understand when the fiduciary duty is triggered. And if I understand what you're saying correctly, it doesn't. John Hancock gets to decide whether or not it wants to take advantage of these tax credits. And your position is that the fiduciary duty to share that economic benefit is only triggered when John Hancock decides to take advantage of those credits. But otherwise, the Romanos and others have no duty owed when it comes to making that initial decision. I think that's right, Your Honor. I think I think in terms of what whether they cash the check is is that something that needs to be left to John Hancock's own corporate decision. And that's just not the way fiduciary duty works, though. I mean, you know, there's no trustee out there saying like, well, I get to decide for myself whether to receive this property that would be beneficial to the fund. And I don't know I'm a fiduciary duty to do what's right for them. Right. I mean, the the idea that you have a decision to make if you owe the fiduciary duty, you have to make the decision that's beneficial to the the beneficiaries. Right. So I think the question is, what what is the decision that we're challenging? We're challenging the one not to give that credit to the plans. And I think in that example, when you're when you're owning property, let's say for the benefit of someone else, let's say someone comes and wants to rent the property. If you decide it's not, you know, I can't do it. It's not it's I simply can't help them out. Then there's no money to be given to the to the to the beneficiary. But if you decide to rent it out, you can't just pocket that money. Well, but that's the but see that I guess that's my point. The fiduciary question is the same in both of those. I mean, if I'm a trustee and let's say I'm a trustee, I own property. And I would say, you know, it would be easier for my life to just not rent this property out because there's a huge pain to rent property. So I'm just going to let it set and depreciate. That's a violation of my fiduciary responsibilities, right? The same as if I decided to rent it out for a below market rate or the same as if I decided to rent it out and I pocketed the money. Like all of those are violations of fiduciary responsibilities, fiduciary duties. I'm trying to figure out how is it in this particular situation? The fiduciary duty only applies once I've decided to rent the property out and not the to the initial question about whether I should do that or not. What makes sense to draw that line there? I mean, I don't know if it's a, you know, it makes sense because that's what happened here, that all of these credits came in and they exist. And they, you know, that's when they come into existence. I mean, I guess the point is the next case is going to be if we say that they owe you these tax credits, and literally the next case that's filed the day after that opinion comes out is going to be, well, in that case, there's a fiduciary duty to claim these credits. And there's a fiduciary duty to file your taxes in such a way that it will be beneficial to your funds. Right? And I don't think so. I think that, you know, in the Pegram case, the court, the Supreme Court was pretty clear that, you know, there's, you could wear different hats at different times. And I think when you're filing your taxes, you're wearing your corporate hat. And I think there's no, I think the court can say that's a fair dividing line because that's something you do anyway. Right? It's, you have to do that anyway. But in terms of, you know, where those credits are coming from, just like if in the check example, you know, when you go deposit your check and you get that money, you wouldn't say, well, going to deposit the check was, you know, in a way that's what the court focused on was just going to deposit that check instead of saying, where did that money come from? And we have an argument is when that money comes from the plan, it should go to the plan. Thank you, Your Honor. All right. Thank you very much. You've saved your full time for rebuttal. Thank you. Santos. Thank you, Your Honor. And may it please the court. My name is Jamie Santos, and I represent the defendant Eppley, John Hancock Life Insurance Company. I'm going to focus on the fiduciary status issues that the court has been focusing on today. And I'd like to start. We just take care of one issue. Yeah. It seems to me, and maybe me only, that the district court got article three standing wrong because it did it at the end once it had ruled against the plaintiffs on their claims and then thought that that vitiated article three standing. But the Supreme Court and we have made pretty clear that for standing purposes, you assume the validity of the claim. And if you assume the validity of the claim, they've shown injury. They would get the tax credit back. They've shown causation. It was John Hancock that decided not to give them the tax credits back. And they've shown redressability in order ordering John Hancock to give them the tax credits. Right. Is my analysis wrong? So I'll say, Your Honor, that I think that- We have to address that issue because the district court took it up. Yes. I disagree with your analysis of the merits of the standing. Not the merits of the plaintiff's theories of liability, but the merits of standing. I agree with you that, yes, it is not best practice to address standing after summary judgment, of course. I think the court did so because understanding how the plaintiff's theories had kind of evolved through litigation helped the court kind of solidify what the claims were and what the alleged injury was. So I think that if the court agrees with us on standing, it would vacate summary judgment and order the case dismissed for lack of standing, as this court has done before. If it disagrees with us on standing, then it would reach the merits. On the standing issue, we think that the district court ultimately got the result right because here, the plaintiff's claimed injury is that- or the plaintiff's claimed violation of ERISA is that John Hancock benefited from applying foreign tax credits on its tax forms. And so to be sure, they are seeking remedial relief- No, that's not the injury. Well, Your Honor- We're not complaining that you took the credits and applied them to your corporate tax liability. The injury and the alleged violation of fiduciary duty that you didn't go back and give them the credits or the monetary value of the credits, that's the violation. Well, Your Honor- The alleged violation. Why isn't that injury? Well, Your Honor, I would characterize that as the relief that they're seeking. I think under ERISA, the violation is complete when a fiduciary to a plan obtains a financial benefit while serving in that fiduciary role. To be sure, they're asking for that money back as kind of a remedy for that violation. But the violation is complete when there is that breach of the duty of loyalty. And so I think that we know from the fact that when the plaintiff- But you can't do both of those at the same time. In other words, John Hancock asserts the tax credit on its tax form. And once that tax form is accepted by the U.S. government and says everything is kosher, it gives the money back. Those are happening at discrete periods of time. So you can't segment the injury requirement that way under Article III, can you? I think that you can segment the relief being sought from the violation of ERISA being alleged because I think that we know from all of the statutory damages and statutory penalties cases that when there's a violation of a statute, that doesn't necessarily lead to harm to the plaintiff, even if they are ultimately seeking monetary relief. And I would also point the court, I think it's relatively important that in the two cases, the two primary cases finding standing in the situation where there is an insurer that received a financial benefit from its arrangement with the plan, but the plan didn't actually any dissipation or harm. Those cases are Edmondson and Merriman. The reasoning that the courts adopted is completely inconsistent with intervening Supreme Court precedent. So Edmondson, for example, said, well, it wouldn't be fair to deprive a plaintiff of statutory monetary relief just because the plan wasn't harmed. And Merriman was even worse. It said, well, Congress gave a right to compliance with the statute and that's enough to establish standing. And those are really the primary cases finding standing in this situation. If the court disagrees with that, I don't want to take you away from the main argument, but I did want to address it because the district court took it up. Okay. On fiduciary status, I'd like to start with maybe two high level points and then address the disclosure theory that my friend on the other side just discussed today. On the two high level points, I think it's really well established from this court's case law, cases like ITPE pension fund versus Hall and Cotton versus MassMutual, that as a general rule, service providers to a plan and employers who sponsor plans aren't fiduciaries with respect to those plans. Service providers in particular, they're allowed to make a profit in their interactions with plans. They're allowed to structure their products and services in a way that is the most financially advantageous to them. And plans have their own counterforce, powerful counterforce in those negotiations. The plan fiduciary is whose job it is to do the research, strike a deal, and do so while acting in the best interest of the plan. What's the counterforce? Yeah, so in a negotiation, anytime a service provider is offering its products or services on the market, it enters into negotiations with the plan's fiduciaries. And the plan's fiduciaries are the kind of individuals that ERISA put in between plan participants and the market as a whole, kind of the David and Goliath reference that Judge Jordan referenced earlier. And so they have the fiduciary obligation to make sure that they're striking the right bargain, doing the right research, and striking the best deal for the plan. But that's not the service provider's role, and they're not required to negotiate against themselves in those negotiations. The second point, kind of high-level point I'd make, is that I think it's equally well established from these cases that courts don't lightly impute plan fiduciary status or plan asset status with respect to defendants who, by default, are not fiduciaries to a plan. And I think this court explained why in ITPE Pension Fund, when the court said that companies aren't supposed to accidentally kind of fall into fiduciary status without their knowledge and agreement, because especially service providers and employers often have their own fiduciary responsibilities to their shareholders and to their employees to make a profit and run their business profitably. The third, I think, on the disclosure point, what I would say is that the plaintiffs, I think, are suggesting that if John Hancock had only disclosed that it wouldn't pass along the financial benefit of foreign tax credits, then these tax credits wouldn't be plan assets and John Hancock wouldn't be a fiduciary. But that's just not how ERISA works. And we pointed—service providers aren't required to disclose all of the ways in which the products that they design provide some type of indirect financial benefit to them, and they're not required to disclose the things that they're not negotiating over. And we provided a rash of cases rejecting this type of theory in the fiduciary status context. And I would point your honors to Lime Cooler, the Seventh Circuit decision, where the court expressly referenced that the total expense ratio that the plan paid was disclosed, but not the insurer's retention of revenue-sharing benefits. The plaintiff's arguments, broadly stated, I think, on fiduciary status are two. One, that John Hancock purportedly exercised authority and control respecting the management or disposition of the foreign tax credits, right, which they say are plan assets. That's bucket number one. Yes. And bucket number two is that John Hancock exercised discretionary authority over the management and administration of the plans, and that also clothed them with fiduciary status. Can you respond to those two? Yes. So on the plan assets point, we agree with the district court and the plaintiffs that the ordinary notions of property rights framework is the right one to use. And so there are two kind of critical elements of that framework. Number one, the thing that is supposedly the plan asset has to be property under the principles of property law. And number two, the plan has to have an ownership interest in that property under principles of property law. And I think here, foreign tax credits or deductions fail both of those prongs. So using the plaintiff's definitions of property, and I think they cite the Third Restatement Section 40 and Black's Law Dictionary, foreign tax credits are not something that are legally capable of being owned. Even John Hancock can't own them. They're not allowed to transfer them. Federal law precludes taxpayers from trying to sell them. They're not something that can be bought or sold or used to pay a debt. So even just under that first threshold requirement, these don't qualify as property. But even if they did qualify as property- What are they? What do you call them? In co-ed what? I wouldn't call them an intangible property interest. I would just say that they are attributes of the tax code that taxpayers apply when they fill out their tax form. I don't think that they fall within this definition of property. And while it's true that any property can be trust property, it still has to be property to begin with. But even if it- Just to be clear, you're saying that the relief that the plaintiffs or the Romanos are seeking is actually illegal? No, I think that there would be a difference between the question of whether this is a planned asset. If this were a planned asset, and if John Hancock were a fiduciary, and if John Hancock breached its fiduciary duties, then courts could still order something like disgorgement as a financial remedy. But what I'm saying is if the plaintiff's theory is to tag John Hancock with fiduciary status based on the proposition that foreign tax credits or deductions are planned assets, they have to prove that they're property and that they are the property of the plan. Let me ask you, let me push on that just a little bit. Could John Hancock, does John Hancock, maybe they do, I don't know. Do you vote the shares that are controlled by John Hancock? Do you have the voting rights? So proxy rights, voting proxy rights is part of the limited fiduciary obligations that John Hancock has. So those aren't property, I guess, right? So I mean, I think, I mean, and just correct me if I'm wrong, but I mean, the shares are held by the fund, the beneficiaries of the fund or the fund itself control the proxy rights because they go with the shares, right? They're not property, but it's some right that goes with the shares. That's almost right, but not exactly. So the mutual- I'm almost right, half the time. The mutual fund shares are planned assets. The John Hancock as holder of the separate accounts has a limited fiduciary status to hold the planned assets in the separate account, vote proxies, and allocate the participant contributions into the investments according to participant instructions, and then credit with the net asset value of the mutual funds. So it's this kind of limited fiduciary obligation. So that, the proxy rights aren't a planned asset. The planned asset is the share of the mutual fund, and voting proxy rights is one of the limited fiduciary obligations that John Hancock has. But is that, is that, is that based on the contract? Is that what you're telling me? Yeah, that's, that's, that's under the contract. I guess just to give the plaintiff class some, some credit here. I mean, isn't this tax credit sort of like a proxy right? It may not be property in the sense that it can be transferred, but it's something that's sort of tagged with the shares. Like by owning the shares, you have access to this tax credit that you would not have otherwise in the same way that you have rights to vote and other like sort of ancillary rights because you're the holder of the shares. And so shouldn't those be, be used for the benefit of the fund in the same way these others are? I don't think so, Your Honor, because I think that, that kind of goes to the plaintiff's theory that the benefit of applying foreign tax credits is kind of in a but-for way attributable to these participant contributions and are attributable, kind of traceable back to plan assets. But if that were the test for either plan asset status or fiduciary status, then all of the retained asset account cases would have come out the other way. You know, the interest earned on retained assets that back death benefit, death benefits and death policies, those, those are still traceable to that plan asset. Same thing with revenue sharing payments. Revenue sharing payments are received from mutual fund fees that participants pay. The same is true of floats. We cite the In Re Fidelity float litigation, which I'll just note that the Department of Labor filed an amicus brief in that case specifically to say fidelity didn't disclose its receipt of floats on its disclosures and so it should be a plan asset. And the First Circuit rejected it. So, so there's, the, the definition of plan asset and the definition of fiduciary status isn't that a benefit was somehow traceable back to the fact that this was a type of plan investment. And that I think goes back to the fact that service providers to plans can structure their products in the ways that are most financial, financially beneficial to them. And I think that a separate account product like this, the, John Hancock receives both the burdens and the benefits of its status as legal, legal owner of those shares, as the legal shareholder. It means that it gets the tax burdens and it gets the tax benefits. And at any point, the trustees of the plan, they, they knew that there was, you could go with a separate account structure where the insurer is going to have those tax benefits and burdens. You could instead go with a trust structure where the plan owns those investments directly and then there is no, there's no insurer kind of playing that intermediary role. But they chose to, to offer this structure instead of a trust agreement structure. They chose to, yes. Absolutely. With a factual question. My understanding, and I'm not saying this was required, but I want to make sure I have the record right. John Hancock did not use the foreign tax credits that it took to reduce the 0.6 annual maintenance charge. Is that right? That's correct. It used revenue sharing payments. Right. I know your contention is that, that bucket made up of the foreign tax credits was not the sort of stuff that the, that the agreement said was going to be used to reduce. But I just wanted to make sure factually I had it right. That's correct. Foreign tax credits were not used to reduce the annual maintenance charge. There were other revenues that were used to do that. Yes. Got it. Okay. That's correct, Your Honor. If I might make, and I'll try to be very quick, just two final points. I think that I heard my friend here today say that, that John Hancock's fiduciary duties were triggered by conduct that is not regulated by ERISA. That just doesn't work under ERISA. Land Fear makes this clear. This court's cases, or multiple court cases like Calda and Luna and HELP incited by the plaintiffs, make clear that when a corporation is acting in its corporate capacity, that doesn't trigger some type of fiduciary obligations. It has to be conducting ERISA governed activity for that to be the case. And then the last point, if I might indulge, Your Honor, is just, I wanted to just briefly address this kind of windfall concept that I think some of the discussion has hinted at. We don't think that there is a windfall here in part because the plaintiffs choose the, this, this platform, which yields both economic benefits and burdens to John Hancock. And also because foreign tax credits are not credits because you paid foreign taxes. The IRS is not in the business of giving people money because they paid money to foreign governments. They are credits that are meant to offset a U.S. tax burden. That's why John Hancock gets to apply them, to offset its U.S. tax burden. And the plans here, of course, do not have that tax burden. And finally, I think the case law, like the cases I discussed, like Edmondson and Lime Keeler make clear that even if there were some type of a windfall, that's not relevant to fiduciary status. It's, it, because the plans had their own people at the bargaining table bargaining with the service provider during negotiations. Thank you, your honors. All right. Ms. Santos, thank you very much. Wineshaw. Thank you. Just a few points to follow up on that burden point. It's to offset the U.S. tax burden when that, when usually the taxpayer is the one who's paid abroad. That doesn't apply here because John Hancock hasn't paid any taxes, so there is no burden here when it, when it gets the tax credit. On the retained asset cases, those cases, and I think this was the district court's sort of error here, was it, it painted with a very broad brush these cases. When you look at those cases, like the Fidelity case, it turned on whether those funds were participants or the plans. The Fidelity case, Justice Souter wrote that decision, turned on language in that, in that plan whether, whether those, those assets belong to the participant or the plan. If it belonged to the plan, he actually said this traceability idea might have worked. And the same with the Edmondson case. The Edmondson case involved a retained asset. Once it was sort of brought out of the plan, given to the participant, it was a creditor relationship, no longer part of the fiduciary obligation. Here, there's an ongoing fiduciary obligation and an ongoing fiduciary duty. On the issue of ordinary property rights, there's no doubt if you just look at a dictionary definition, this is considered an asset. Professor DeSimone also submitted a declaration saying that foreign tax credits are on the balance sheet. They are assets. They are considered property of these, of John Hancock. So the question is whether they should be considered plan assets. What do you think the essential attributes of property are in this setting? Like, what do you need to constitute property? Well, here it's just, we, we know it's, it's, it's on the balance sheet that has monetary value. It doesn't necessarily need to be transferable. We cited a, you know, that, that is something that property often is, but it doesn't need to be, to be held in trust. It has monetary value that, that, that, that is used and then can be exchanged for other things. The, the property, the tax credit cannot be, but obviously money can be. The, the ownership, the ITPE case we don't think applies because that was simply about whether to impose fiduciary duties on a corporate officer for unpaid contributions. And that was going to make the entire corporation's assets basically fiduciary plan assets. When the corporate officer wasn't the one that negotiated that plan instrument. Here, we think the, the, the contractual rule that generally applies against the drafter should be applied here. Hancock drafted these agreements. And if you construe the agreements against John Hancock for the, the provisions that you cited, Your Honor, about reducing the AMC, that this is a tax credit, credit is mentioned there that should be construed against them. I would point the court also to the Harris Second Circuit case against John Hancock, which talked about allocating investment returns. That was in its general account. And the court there held that when the allocation decisions were made, that really belonged, that was a fiduciary duty. The part that was not a fiduciary duty was being unwilling to change specific contractual terms. But here there is no specific contractual term that entitles John Hancock to the foreign tax credits. And I see my time is up. I thank Your Honors for your time. And we urge reversal on all fronts. Thank you. All right. Thank you both very much.